# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| PAUL WALLACE DINWIDDIE, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | No. 3:17-CV-166-HSM-DCP |
| TAMMY FORD, Warden, | ) ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner Paul Wallace Dinwiddie, a Tennessee inmate proceeding pro se, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging his Tennessee convictions for two counts of aggravated rape and two counts of aggravated sexual battery and resulting 45-year sentence. Having considered the submissions of the parties, the State-court record, and the law applicable to Dinwiddie's claims, the Court finds that the petition should be denied.

**I.    SUMMARY OF EVIDENCE & PROCEDURAL HISTORY**

On October 23, 2006, the victim, a personal trainer and physical therapist assistant, was awakened in the bedroom of her ground-floor apartment to a man's voice and a bath towel over her face [Doc. 18-2 p. 33-39, 63]. The assailant called her by her name and held a knife to her throat before digitally penetrating her vagina, performing oral sex on her, and kissing her breasts [*Id.* at 40]. The assailant then masturbated and ejaculated onto a corner of the towel that was covering her face [*Id.*]. After the assault, the assailant turned on the lights, stating that he had dropped his lighter [*Id.*]. The victim was able to look beneath the towel a little, and she saw a brown-haired, balding white man with a "beer belly" who weighed approximately 190 pounds [*Id.* at 44, 55, 58]. The victim also noted that he wore denim jeans with a brown belt and had "not

small," rough hands [*Id.*].  She otherwise recalled that he "reeked of cigarette smoke" and had a distinctive southern accent [*Id.* at 46, 60].

The assailant eventually left, and the victim called the police [*Id.* at 41].  Law enforcement collected a note from the victim's apartment from an unknown author stating he or she wanted to meet the victim, and some long and short hairs that the victim stated she found on her hand after the attack [*Id.* at 64-66, 69-70].  A few days later, a hand towel and condom were found near a dumpster at the victim's apartment, and DNA testing of those items showed a male contributor that was not Dinwiddie [Doc. 18-4 p. 9, 15, 28, 32, 51].  DNA collected from the victim's breasts did, however, match Dinwiddie [*Id.* at 47-48].  Dinwiddie was arrested inside his home, where officers found ashtrays, lighters, and a pack of cigarettes [*Id.* at 68, 88].

Following a jury trial, Dinwiddie was convicted of two counts of aggravated rape and two counts of aggravated sexual battery [*See, e.g.*, Doc. 18-1 p. 107-110].  At sentencing, the trial court determined that Dinwiddie had a significant criminal history that included incidents where he stalked women and sentenced Dinwiddie to an effective 45 years in prison [Doc. 18-3 p. 43-50].

Dinwiddie appealed, and on July 23, 2010, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court's judgment and sentence but remanded the case to the trial court for merger of the two aggravated sexual battery jury verdicts into one judgment, and the two aggravated rape verdicts into one judgment. *State v. Dinwiddie*, No. E2009-01752-CCA-R3-CD, 2010 WL 2889098, at *1-8 (Tenn. Crim. App. July 23, 2010) *perm. app. denied* (Tenn. Oct. 15, 2010) ("*Dinwiddie I*").  On October 15, 2010, the Tennessee Supreme Court denied Dinwiddie's application for permission to appeal.  *Id.*

On April 26, 2011, Dinwiddie filed a petition for post-conviction relief that was later amended by counsel, who incorporated Dinwiddie's claims into the amendment [Doc. 18-13 p. 5-

31, 39-44]. Following an evidentiary hearing, the post-conviction court denied relief [*Id*. at 84-87]. Aggrieved, Dinwiddie appealed, and the TCCA summarized the issues and evidence presented at the evidentiary hearing as follows:

> At the post-conviction hearing, only the Petitioner testified. He explained that he had been represented by appointed counsel ("Trial Counsel") and that they met approximately six times. Their meetings lasted about thirty minutes each. He explained to Trial Counsel that he had not committed the crimes against the victim, that she had been an escort, and that she had come to his room at the InTown Suites Apartments on Kingston Pike. Trial Counsel advised him against testifying because of his criminal record.
>
> At trial, the victim did not identify him as her assailant, and there were no other eyewitness identifications. His defense to the DNA match, he testified, was "[t]hat when she came to my hotel, I paid her for sex. And I did suck her breast at that time." This transaction occurred at about 11:00 p.m., before the victim was raped at her apartment.
>
> The Petitioner testified that Trial Counsel failed to challenge "properly" the State's evidence. Specifically, Trial Counsel did not have admitted into evidence a cast of a footprint found outside the victim's apartment window so that Trial Counsel could demonstrate that the cast did not match the pair of boots recovered from the Petitioner; Trial Counsel did not call sufficient witnesses to testify that the Petitioner did not smoke but that others smoked at his residence; Trial Counsel did not have cigarette butts tested for DNA to demonstrate that the Petitioner's DNA was not on them; Trial Counsel did not call sufficient witnesses to testify that the Petitioner had "no hair"; and Trial Counsel did not adduce proof that the handwriting and e-mail address contained in the note found on the victim's door were not the Petitioner's. Trial Counsel also failed to establish the victim's profession as an escort.
>
> On cross-examination, the Petitioner acknowledged that his sister had testified at trial that the Petitioner had been living with her at the time of the crimes and that the Petitioner could not have committed the crimes because she would have heard him if he had left her house. The Petitioner explained that his sister was incorrect about his location at the relevant time but acknowledged that she had provided him with an alibi during her testimony at the trial. His sister also testified that he did not smoke.
>
> He did not recall stating during his interview with the police that he did not know the victim. He maintained that he contacted the victim as an escort, that she came to his room, and that she performed consensual oral sex, only. He recalled that there had been photographs of him introduced at trial that showed him with hair. He

3

> asserted that these photographs were "several years old" and that the hair in the photographs was blonde, not brown.
>
> After hearing this proof, the post-conviction court denied relief, concluding that "the gravamen of petitioner's allegations are addressed to the sufficiency of the evidence and he does not specifically point out how his counsel was ineffective." The Petitioner argues to this Court that the post-conviction court should have granted him relief.

*Dinwiddie v. State*, E2013-01472-CCA-R3-PC, 2014 WL 869571, at *2-3 (Tenn. Crim. App. March 4, 2014), *perm. app. denied* (Tenn. July 14, 2014) ("*Dinwiddie II*"). The TCCA affirmed the post-conviction court's decision on March 4, 2014. *Id.* On July 14, 2014, the Tennessee Supreme Court denied Dinwiddie's application for permission to appeal. *Id.*

On or about August 24, 2014, Dinwiddie filed the instant federal habeas petition in the United States District Court for the Western District of Tennessee, raising the following grounds for relief as paraphrased by this Court:

| | |
|---|---|
| Ground One: | Ineffective assistance of counsel |
| Ground Two: | Insufficient evidence |
| Ground Three: | Trial court error |
| Ground Four: | Excessive sentences |

[Doc. 1]. Thereafter, Respondent was ordered to respond to the petition and complied by filing an answer on or about August 26, 2016 [Doc. 19]. On April 25, 2017, the petition was transferred to this District [Doc. 15]. Dinwiddie subsequently sought and was granted permission to amend his petition to include additional arguments and/or correct errors [*See* Docs. 25, 28, 39, 30, 21, 32].

## II. LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal

habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules, or that his trial counsel rendered ineffective assistance. *See id*. at 753. Additionally, the prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

**III. GROUND ONE: INEFFECTIVE ASSISTANCE OF COUNSEL**

In his first ground for federal habeas relief, Dinwiddie alleges the ineffective assistance of trial, appellate, and post-conviction counsel [*See* Doc. 1 p. 15-21; Doc. 22; Doc. 29]. As

paraphrased by the Court, Dinwiddie alleges he received the ineffective assistance of counsel due to the following:

1. Trial counsel's failure to question victim or nurse practitioner regarding lack of DNA found in victim's vaginal area.

2a. Trial counsel's failure to prepare Dinwiddie's sister to testify.

2b. Trial counsel's failure to call witnesses who would have testified Dinwiddie was bald.

3. Trial counsel's failure to object to the introduction of the knife from Dinwiddie's home.

4. Trial counsel's coercion of Dinwiddie not to testify in his own defense.

5. Trial counsel's failure to present evidence to disprove that Dinwiddie was a smoker.

6. Trial counsel's failure to conduct a pretrial investigation.

7. Trial counsel's failure to have the State produce a cast of the boot print taken from the crime scene.

8. Trial counsel's failure to order independent DNA testing of the collected hairs, swabs, and cigarettes butts.

9. Trial counsel's failure to question the victim regarding whether the perpetrator wore gloves.

10. Trial counsel's failure to properly cross-examine the victim.

11. Trial counsel's disregard of Dinwiddie's request that the potential juror who was an attorney known to trial counsel be dismissed.

12. Trial counsel's failure to allow the jury to view and feel Dinwiddie's hands in order to disprove the victim's description of them.

13. Trial counsel's failure to have handwriting analysis done on the handwritten note introduced at trial.

14. Trial counsel's failure to object to the prosecution's introduction of Dinwiddie's prior criminal convictions.

15. Appellate counsel's failure to argue the sufficiency of the evidence to establish the accused crimes.

16. Appellate counsel's failure to timely file a Rule 11 motion.

17. Trial counsel's failure to object to the fitness of the presiding judge, Judge Baumgartner.

18. Post-conviction counsel's failure to visit Dinwiddie or discuss witnesses with him.

### A. Procedurally Defaulted Claims

Dinwiddie has presented numerous ineffective assistance of counsel claims — Sub-claims 1, 2a, 4, 6, 9, 11, 14, and 15 — that were not presented to the TCCA on appeal from post-conviction court's denial of relief [*See* Doc. 18-15]. A claim must be presented to the TCCA in order to be exhausted under 28 U.S.C. § 2254(b). *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust state remedies). Therefore, by failing to pursue these claims to the TCCA, Dinwiddie failed to fully exhaust these claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that proper exhaustion requires petitioner to pursue claim through "one complete round of the State's established appellate review process"). Accordingly, these claims are technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule). Dinwiddie has not argued that cause and prejudice exist to excuse the default. Therefore, Dinwiddie has not provided grounds to excuse the procedural default of these claims, and they must be dismissed.

## B. Properly Exhausted Ineffective Assistance of Counsel Claims

Dinwiddie's ineffective assistance sub-claims 2b, 3, 5-8, 10, 13, and 17[1] were exhausted through appeal to the TCCA. These claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. 668 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687-88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id*. at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id*. at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the State-court's decision that *Strickland* was not met warrants relief under

---

[1] Although sub-claim 17 (regarding the presiding judge's fitness) was raised on appeal to the TCCA, it was abandoned by post-conviction counsel at the start of the evidentiary hearing, and no evidence was presented in support of this claim [Doc. 18-14 p. 11-12; Doc. 18-15 p. 15].

AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

### 1. The State-court decision

Dinwiddie's exhausted ineffective assistance of counsel claims were rejected in State court, with the TCCA finding:

> We agree with the post-conviction court that the Petitioner failed to establish by clear and convincing evidence that Trial Counsel performed deficiently. The primary thrust of the Petitioner's proof consisted of allegations that Trial Counsel failed to adduce evidence in support of the defense theory. However, the Petitioner did not call at the post-conviction hearing any of the witnesses that he claimed could have testified in his favor at trial, nor did he adduce the footprint proof, the DNA proof, or the handwriting proof that he claimed Trial Counsel should have elicited at trial. The Petitioner also did not adduce any proof other than his own testimony that the victim had been a professional escort.
>
> This Court has made clear that a claim of ineffective assistance of counsel arising from the failure to call a witness must be supported by testimony from the witness at the postconviction hearing. *See, e.g., Denton v. State*, 945 S.W.2d 793, 802–03 (Tenn.Crim.App.1996); *Wade v. State*, 914 S.W.2d 97, 102 (Tenn.Crim.App.1995); *Black v. State*, 794 S.W.2d 752, 757–58 (Tenn.Crim.App.1990); *see also Pylant*, 263 S.W.3d at 869. Without the alleged witnesses' testimony, there is no way for the post-conviction court (or this Court) to evaluate whether the trial lawyer was deficient in failing to adduce the alleged testimony, or to evaluate whether the absence of the testimony from trial had a prejudicial effect on the outcome. The same analysis applies to other proof that a petitioner claims should have been adduced at trial but which he or she does not present at the post-conviction hearing.
>
> Accordingly, we hold that the Petitioner failed to establish by clear and convincing evidence that he is entitled to post-conviction relief on the basis of ineffective assistance of counsel. Therefore, we affirm the post-conviction court's denial of post-conviction relief.

*Dinwiddie II*, 2014 WL 869571, at *4-5.

### 2. Analysis

A review of the record supports the determination that Dinwiddie offered no evidence, other than his own testimony, regarding his allegations of ineffective assistance of counsel [*See* Doc. 8-14]. His testimony was discredited by the post-conviction court, and the TCCA reasonably determined that Dinwiddie failed to establish an entitlement to relief by clear and convincing evidence. *See, e.g., Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006) ("The conclusion of both the state trial court and the state court of appeals, that there was no proper evidence to support Petitioner's claim [regarding what the witness' testimony would have been if the witness testified], was not contrary to or an unreasonable application of clearly established law.").

Therefore, the Court finds that Dinwiddie has not demonstrated that the TCCA's decision rejecting these claims was contrary to or involved an unreasonable application of *Strickland*, nor has he demonstrated that the decision was based on an unreasonable determination of facts in light of the evidence presented. Therefore, he is not entitled to federal habeas relief as to these sub-claims.

### C. NON-COGNIZABLE INEFFECTIVENESS CLAIMS

In sub-claim 16, Dinwiddie claims that he was denied the effective assistance of appellate counsel due to appellate counsel's failure to file a timely Rule 11 application for a writ of certiorari to the Tennessee Supreme Court [Doc. 1 p. 18]. In sub-claim 18, Dinwiddie claims that he was denied the effective assistance of post-conviction counsel due to post-conviction counsel's failure to meet with him or properly advise him regarding the post-conviction evidentiary hearing [*Id.* at 20]. Neither of these claims presents a basis for federal habeas relief.

First, as to sub-claim 16, there is no constitutional right to a discretionary appeal, either in State court or to the United States Supreme Court. *See, e.g., Ross v. Moffitt*, 417 U.S. 600 (1974).

Therefore, a petitioner retains no right to counsel for those proceedings, and thus no extant right to effective counsel. *See, e.g., Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982).

Second, as to sub-claim 18, a freestanding claim that post-conviction counsel was ineffective is not a cognizable basis for federal habeas relief. *See* 28 U.S.C. § 2254(i) (stating claims alleging ineffectiveness of collateral review counsel are not cognizable habeas claims); *Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings."); *Wallace v. Sexton*, No. 13-5331, 2014 WL 2782009, at *11 (6th Cir. June 20, 2014) (finding "[t]he Supreme Court has not recognized ineffective assistance of post-conviction counsel as a free-standing constitutional claim").

Accordingly, because these sub-claims do not affect a constitutional right, relief is precluded by 28 U.S.C. § 2254(a).

## IV. GROUND TWO: INSUFFICIENT EVIDENCE

In his second ground for relief, Dinwiddie argues that the evidence against him was insufficient to sustain his convictions, as there was no physical evidence that placed him inside the victim's apartment [*See, e.g.*, Doc. 1 p. 7, 21].

A challenge to the sufficiency of the evidence is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which allows a reviewing court to set aside a verdict on the basis of insufficient evidence only if, "after viewing the evidence in the light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution and must defer to that resolution, because such a standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Because both the AEDPA and the *Jackson*

standard apply to insufficiency claims, this Court's review is doubly deferential. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

On direct appeal, the TCCA concluded that Dinwiddie's convictions were supported by sufficient evidence, noting:

> The defendant argues primarily that inconsistencies between the victim's description of the assailant and [his sister]'s description of the defendant undermine the State's case. We disagree. The victim described a balding, 190-pound male who "reeked" of cigarette smoke as her attacker. Detective Hall testified that the defendant was 200 pounds and bald and that the defendant's home contained ashtrays filled with burned cigarettes. Further, the defendant's boots retrieved from his home matched the length of the muddy boot-print found in the victim's guest bedroom. The jury clearly did not credit [Dinwiddie's sister]'s description of the defendant and credited the State's evidence.
>
> Lastly, the victim testified that the assailant placed his mouth on her breasts. Swabs taken from her breasts contained saliva with a DNA profile matching the defendant to the exclusion of the world population. This direct evidence clearly places the defendant at the scene of the crime and proves his identity as the rapist.
>
> The defendant also claims that the fact that the DNA found on the towel recovered from the dumpster of the apartment complex did not belong to him exonerates him. However, aside from being found in a dumpster in the same apartment complex, no evidence suggested that this towel was the one used to cover the victim's face. Further, the towel was found with a condom containing the same unknown DNA profile, and the victim specifically testified that neither she nor the assailant possessed a condom.

*Dinwiddie I*, 2010 WL 2889098, at *8-9.

The evidence presented by the State supported the victim's description of her assailant, and the DNA swabs taken from the victim's breast matched Dinwiddie's DNA. Given this evidence and testimony, it is not unreasonable to conclude that a rational juror could find Dinwiddie guilty of aggravated sexual battery and aggravated rape beyond a reasonable doubt. Therefore, the decision rejecting this claim is not contrary to, nor is it an unreasonable application of, the *Jackson* standard, nor is it based upon an unreasonable determination of facts in light of the evidence presented. Dinwiddie is not entitled to federal habeas relief on this claim.

## V. GROUND THREE: TRIAL COURT ERROR

In his third ground for relief, Dinwiddie claims that the trial court erred in (1) instructing the jurors on flight, (2) allowing a nurse practitioner to testify as an expert, and (3) failing to instruct the jurors on lesser-included offenses.

### A. Instruction on Flight

Dinwiddie argues that the jury was improperly instructed that it could infer his guilt from the fact of his "flight," when, in fact, he merely retreated to his bedroom upon seeing the police enter his home to effectuate an arrest [Doc. 1 p. 22]. Dinwiddie's jury was instructed:

> The flight of a person accused of a crime is a circumstance which, when considered with all the facts of the case, may justify an inference of guilt. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for your determination.
>
> The law makes no precise distinction as to the manner or method of flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight.
>
> If flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime alleged. However, since flight by a defendant may be caused by a consciousness of guilt, you may consider the fact of flight, if flight is so proven, together with all of the other evidence when you decide the guilt or innocence of the defendant. On the other hand, an entirely innocent person may take flight and such flight may be explained by proof offered, or by the facts and circumstances of the case.
>
> Whether there was flight by the defendant, the reasons for it, and the weight to be given to it, are questions for you to determine.

[Doc. 18-7 p. 139].

On direct appeal, the TCCA found that the trial court did not abuse its discretion by instructing the jury on "flight," noting that Dinwiddie ran from police when they came to arrest him and "holed-up" in an area of his house while armed. *Dinwiddie I*, 2010 WL 2889098, at *9.

14

It otherwise determined that any error occasioned by the giving of the instruction was harmless error "given the overwhelming proof" of Dinwiddie's guilt. *Id.* at *11.

The Court notes that there is no general federal right to a properly instructed jury; jury instructions are ordinarily a State-law issue. *See Estelle v. McGuire*, 502 U.S. 62, 70-72 (1991). As such, errors in State-court's jury instructions do not warrant federal habeas relief unless they deprive a petitioner of a fundamentally fair trial. *Id*. at 72-73; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Therefore, a petitioner seeking federal habeas relief on the basis of an erroneous jury instruction must establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

In this case, the flight instruction was permissive and did not create a mandatory presumption of guilt that would violate due process, as it did not relieve the State of its burden of prove Dinwiddie's guilt of the crimes (or of his flight) beyond a reasonable doubt. *See Francis v. Franklin*, 471 U.S. 307, 313 (1985) (holding due process "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime"); *Estelle*, 502 U.S. at 78-79 (noting permissive inference does not violate due process because "the State still has the burden of persuading the jury that the suggested conclusion should be inferred based on the predicate facts proved"). Additionally, there is no suggestion that the jury was not otherwise instructed properly and impartial. *See Rivera v. Illinois*, 556 U.S. 148, 162 (2009) (holding due process requires "a fair trial before an impartial and properly instructed jury"). Therefore, Dinwiddie has not demonstrated that the instruction by itself violated his due process rights. Thus, he has failed to demonstrate that the decision rejecting this claim is contrary to, or that it involves an unreasonable application of, the clearly established Supreme Court precedent, or that it is based

upon an unreasonable determination of facts in light of the evidence presented. Dinwiddie is not entitled to federal habeas relief on this claim.

B.  **Expert Testimony**

Dinwiddie next asserts that the trial court erred in allowing a nurse practitioner to testify as an expert [Doc. 1 p. 22]. However, this claim is one alleging failure of a trial judge to comply with State law, and therefore, it is not a cognizable federal habeas claim. *See Estelle*, 502 U.S. at 67-68 (holding "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Sinistaj v. Burt*, 66 F.3d 804, 807 (6th Cir. 1995) ("Errors of state law alone cannot form the basis of relief under federal habeas corpus."). Additionally, as Dinwiddie raised this issue on direct appeal solely on the basis of State law [*see* Doc. 18-8 p. 23-36], he has procedurally defaulted his federal claim. *See, e.g., McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991) ("Explicit citation to the Constitution or to a federal case is necessary for fair presentation of a constitutional claim in state court."). Accordingly, this claim is non-cognizable and otherwise procedurally defaulted.

C.  **Lesser-Included Offenses**

Dinwiddie also claims that the trial court erred by not telling the jury that they could convict on lesser-included offenses [Doc. 1 p.22]. However, Dinwiddie has never presented a lesser-included-offenses claim to the State courts, and therefore, such a claim is procedurally defaulted and barred from federal habeas review. *See O'Sullivan*, 526 U.S. 838, 845 (1999) (holding that proper exhaustion requires petitioner to pursue claim through "one complete round of the State's established appellate review process"); *Bagley*, 696 F.3d at 483 ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period)

and § 40-30-102(c) ("one petition" rule). Dinwiddie has not argued that cause and prejudice exist to excuse the default, and therefore, this claim must be dismissed.[2]

## VI. GROUND FOUR: EXCESSIVE SENTENCES

In his final ground for relief, Dinwiddie claims that the trial court erred in imposing excessive sentences [Doc. 1 p. 23]. However, Dinwiddie's claim regarding the trial judge's imposition of sentences is based on an alleged misapplication of State law, and therefore, it is not a cognizable federal habeas claim. *See Estelle*, 502 U.S. at 67-68 (holding "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Sinistaj*, 66 F.3d at 807 ("Errors of state law alone cannot form the basis of relief under federal habeas corpus."). Additionally, because Dinwiddie raised this issue on direct appeal solely on the basis of State law [*see* Doc. 18-8 p. 30-32], he has procedurally defaulted his federal claim. *See, e.g., McDougald*, 942 F.2d at 510 ("Explicit citation to the Constitution or to a federal case is necessary for fair presentation of a constitutional claim in state court."). Accordingly, this claim is non-cognizable and otherwise procedurally defaulted.

## VII. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason

---

[2] The Court otherwise notes that the jury was instructed on lesser-included offenses [*See* Doc. 18-7 p. 122-37].

17

would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## VIII. CONCLUSION

Dinwiddie has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

        */s/ Harry S. Mattice, Jr.*
        HARRY S. MATTICE, JR.
        UNITED STATES DISTRICT JUDGE